| STATE OF INDIANA | ) | IN THE LAKE SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF LAKE | ) | CROWN POINT, INDIANA |

JEAN POULARD, )
)
        Plaintiff, )
)
vs. )   Case No: 45C011603PL00026
)
THE TRUSTEES OF INDIANA )
UNIVERSITY, D/B/A INDIANA )
UNIVERSITY and INDIANA UNIVERSITY )
NORTHWEST, individually )
and in their official capacities as Trustees of )
Indiana University; WILLIAM J. )
LOWE, individually )
and in his official capacity as Chancellor of )
Indiana University Northwest; MARK MCPHAIL, )
individually and in his official capacity as )
executive Vice Chancellor for Academic Affairs )
of Indiana University Northwest; IDA GILLIS, )
individually and in her official capacity as )
Director of Affirmative Action )
and Employment Practices and Title )
IX Deputy Coordinator of Indiana University )
Northwest; and GIANLUCA DI MUZIO, )
individually and in his official capacity as )
associate professor and former Chair of the )
Department of History, Philosophy, Political )
Science, and Religious Studies at )
Indiana University Northwest, )
)
        Defendants. )

Filed in Clerk's Office

MAR 09 2016

CLERK LAKE CIRCUIT COURT

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

COMES NOW Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for his Complaint for damages against the Defendants states the following:

### THE PARTIES

1. At all times mentioned herein, Dr. Jean Poulard, was employed by Indiana University Northwest Campus ("IU Northwest") in the Department of History, Philosophy, Political

1

Science and Religious Studies, located at 3400 Broadway, Gary, Indiana, and was at all times mentioned herein a tenured professor of political science.

2. At all times relevant herein, IU Northwest was a state agency and duly organized institution of higher learning operating at a so-called extension campus with an address of 3400 Broadway, Gary, Indiana, in Lake County, Indiana, with its Board of Trustees operating as the body politic of IU Northwest.

3. At all times mentioned herein, William Lowe, was a state actor employed by IU Northwest as its chancellor, located at 3400 Broadway, Gary, Indiana, in Lake County, Indiana.

4. At all times mentioned herein, Mark McPhail, was a state actor employed by IU Northwest as its Executive Vice Chancellor for Academic Affairs, located at 3400 Broadway, Gary, Indiana, in Lake County, Indiana.

5. At all times mentioned herein, Ida Gillis, was state actor employed by IU Northwest as its Director of Affirmative Action and Employment Practices and Title IX Deputy Coordinator, located at 3400 Broadway, Gary, Indiana, in Lake County, Indiana.

6. At all times mentioned herein, Gianluca Di Muzio, associate professor and former Chair of the Department of History, Philosophy, Political Science, and Religious Studies, a was state actor employed by IU Northwest, located at 3400 Broadway, Gary, Indiana, in Lake County, Indiana.

7. At all times relevant herein, Defendants Lowe, McPhail, Gillis, and Di Muzio acted in both their individual capacities as a private citizen, and in their official capacities as professor and/or administrator of IU Northwest.

## GENERAL ALLEGATIONS

8. That Plaintiff herein reaffirms and realleges paragraphs 1 through 7 of this Complaint.

2

9. Upon information and belief, Di Muzio filed a complaint against Dr. Jean Poulard, alleging violations of the University Sexual Misconduct Policy and the Code of Academic Ethics sometime during the summer of 2015.

10. Upon information and belief, Di Muzio complained that, among other things, Poulard violated IU Northwest's policies by making racist and sexist speech.

11. To date, Poulard has not received copies of Di Muzio's complaint.

12. Gillis was assigned to investigate Di Muzio's allegations against Poulard during the summer of 2015 on IU Northwest's behalf.

13. On July 14, 2015, Gillis contacted Poulard by phone to request that he come to her office on July 15, 2015.

14. Gillis did not inform Poulard of the precise purpose of her proposed meeting on July 14, 2015.

15. Gillis did not inform Poulard of the seriousness of the allegations against him or the breadth of IU Northwest's investigation, and instead merely demanded that Poulard come to her office.

16. Poulard declined to meet Gillis on July 15, 2015, but informed Gillis that he did intend to meet with her to discuss the allegations against him, and that he wished to do so in the company of his attorney.

17. Poulard also requested that Gillis provide him with information regarding the complaining students and copies of the complaints filed against him prior to their meeting, and identified a number of students that Gillis could interview in his defense.

18. On August 5, 2015, Gillis responded to Poulard to inform him that IU Northwest's policy prohibited him from having an attorney present during their meeting, and stated that his

attorney was required to wait in the lobby during the meeting if his attorney attended. This information was false.

19. Despite responding to Poulard on August 5, 2015, Gillis did not contact Poulard again to schedule a meeting with him as he requested.

20. Gillis never contacted any of the students that Poulard identified for an interview.

21. Gillis did not provide Poulard with any of the information that he requested, or notify him in a timely manner of any of the evidence she collected or any of the allegations against him.

22. On November 2, 2015, Vice Chancellor McPhail issued a letter sanctioning Poulard for violating Indiana University's Sexual Misconduct Policy and Code of Academic Ethics.

23. McPhail's November 2, 2015 letter stated that this sanction was premised upon a report created by Gillis pursuant to her investigation of Poulard.

24. To date, Poulard has not received a copy of Gillis's report, or any of the evidence collected by Gillis during her investigation.

25. McPhail's November 2, 2015 letter falsely claims that Poulard refused to participate in the investigation when approached by Gillis.

26. McPhail's November 2, 2015 letter formally reprimanded Poulard, suspended him from his teaching position without pay for the spring semester of 2016, and required him to participate in two seminars entitled "Indiana University's Sexual Misconduct Training" and "Working with Under-Served Populations."

27. On November 11, 2015, Poulard appealed McPhail's findings to the Faculty Board of Review.

28. Just prior to Poulard's December 9, 2015 hearing before the Faculty Board of Review, Poulard conferred with general counsel of IU Northwest regarding the status of Poulard's appeal.

4

29. During this conference, IU Northwest's general counsel represented to Poulard that his attorney need not be present at the December 9, 2015 hearing, because it was not a full hearing on the merits of his appeal, and that an additional hearing would occur on the merits at a later date.

30. IU Northwest's representations were untrue, as the December 9, 2015 Faculty Board of Review hearing was a full hearing on the merits of Poulard's appeal.

31. As a result, Poulard was deprived of the company of his attorney during the December 9, 2015 hearing.

32. IU Northwest's efforts have denied Poulard access to his attorney twice during critical moments of IU's investigation, despite Poulard informing IU's investigators that he desired an attorney.

33. On December 18, 2015, the Faculty Board of Review found that IU Northwest's investigation was procedurally flawed because Gillis told Poulard that he was not allowed to attend his meeting with her in the company of his attorney.

34. McPhail notified Poulard on December 21, 2015 that he would be given an additional opportunity to meet with Gillis with his attorney present.

35. On December 29, 2015, Poulard wrote to IU Northwest's general counsel to notify her that he intended to accept McPhail's offer and meet with Gillis.

36. In his December 29, 2015 letter, Poulard requested that IU Northwest set aside the factual findings and sanctions from the earlier investigation pending the results of Poulard's meeting with IU Northwest's investigator.

37. Poulard also requested in his December 29, 2015 letter that IU Northwest replace Gillis and McPhail with different administrators to oversee the remainder of his investigation.

38. IU Northwest responded on December 30, 2015, and refused to set aside Poulard's sanctions or replace Gillis and McPhail.

5

39. Notwithstanding the procedural dispute between IU Northwest and Poulard, Poulard agreed to meet with Gillis on January 6, 2015.

40. On January 5, 2016, IU Northwest provided Poulard with a perfunctory summary of the allegations against him.

41. This is the first time that Poulard was ever notified of any of the allegations at issue in IU Northwest's investigation.

42. IU Northwest's summary of the allegations against Poulard were so factually insufficient that Poulard was unable to respond in a meaningful way or defend himself.

43. On the morning of January 6, 2016, Poulard contacted IU Northwest to contest the sufficiency of these allegations, and to request that IU Northwest provide him with more detailed notice of the allegations at issue.

44. IU Northwest refused Poulard's request.

45. Despite these issues, Poulard met with Gillis in the afternoon of January 6, 2016.

46. On January 8, 2016, McPhail notified Poulard that no alteration to IU Northwest's November 2, 2015 sanction would be made.

47. Poulard's meeting with Gillis on January 6, 2016, and the subsequent determination not to alter IU Northwest's November 2, 2015 administrative action against him constituted a sham proceeding conducted simply to hide the mishandling of IU Northwest's initial investigation.

48. Poulard has exhausted all administrative remedies by appealing the determinations of Gillis and McPhail to the Faculty Board of Review.

49. Poulard submitted records requests pursuant to the Indiana Access to Public Records Act to the Office of Vice President and General Counsel.

50. An employee of the Office of Vice President and General Counsel contacted Poulard to request that he narrow the scope of his records requests, and he obliged.

51. To date, Poulard has not received any records responsive to his records request from the office of the Vice President and General Counsel.

## COUNT I

### (I.C. § 5-14-3-9)

### (Compelling Production of Public Records)

COMES NOW Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for Count I of his Complaint for Declaratory Judgment alleges against Defendants, and each of them, and states the following:

52. That Plaintiff herein reaffirms and realleges paragraphs 1 through 51 of this Complaint.

53. Poulard submitted several public records requests to IU's office of Office of Vice President and General Counsel in accordance with IU policy.

54. After acknowledging receipt of Poulard's requests, the Office of the Vice President and General Counsel provided pretextual reasons not to provide Poulard with the documents he sought in response to a number of his record requests.

55. Further, the Office of the Vice President and General Counsel simply did not respond to several Poulard's requests, resulting in a constructive denial.

56. IU's denial of Poulard's record requests was legally improper.

**WHEREFORE**, the Plaintiff prays that this Court enter a judgment finding and declaring the following:

 a. That IU be compelled to produce the records requested by Dr. Jean Poulard.

 b. That this Court grant Dr. Jean Poulard reasonable attorney's fees and such other and further relief as it deems just and proper under the circumstances.

## COUNT II

### (Declaratory Judgment)

COMES NOW Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for Count II of his Complaint for Declaratory Judgment alleges against Defendants, and each of them, and states the following:

57. That Plaintiff herein reaffirms and realleges paragraphs 1 through 56 of this Complaint.

58. Plaintiff requests a judicial determination that Plaintiff did not violate IU Northwest Sexual Misconduct Policy and Code of Academic Ethics, as was found by IU Northwest, because IU Northwest's policies were unconstitutional.

59. IU Northwest's Policy fails to provide clear standards as to what conduct constitutes "sexual harassment" and "discriminatory harassment."

60. Further, IU Northwest's policies fail to set forth a clear procedure under which investigations must proceed.

61. Due process requires that a state enactment be held void for vagueness if the prohibitive terms are not clearly defined, such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.

62. The failure of IU Northwest's Sexual Misconduct Policy to define the applicable standard or definition of sexual harassment and discriminatory harassment violates due process and is therefore unconstitutional.

63. Further, IU Northwest's Sexual Misconduct Policy is unconstitutionally overbroad as applied to Poulard, as it was used to punish Poulard for constitutionally protected speech.

64. Plaintiff's conduct that Defendants determined was "sexual harassment" and/or "discriminatory harassment" under IU Northwest's Policy, was protected speech, and therefore IU

Northwest's policy is unconstitutional as applied to Plaintiff.

65. Plaintiff requests a judicial determination that IU Northwest's policy is unconstitutional, as it violates the principles of Due Process and Freedom of Speech under the United States Constitution and Indiana Constitution.

66. Plaintiff has no adequate remedy at law.

**WHEREFORE**, the Plaintiff prays that this Court enter judgment finding and declaring the following:

    c. That Dr. Jean Poulard did not violate IU Northwest Sexual Misconduct Policy or Code of Academic Ethics as found by IU Northwest.

    d. That IU Northwest's disciplinary policies violate the principles of due process.

    e. That IU Northwest's disciplinary policies are unconstitutional and chill the exercise of free speech as protected by the First Amendment and Ind. Const. Art. 1, § 9.

    f. That this Court grant Dr. Jean Poulard such other and further relief as it deems just and proper under the circumstances.

## COUNT III

### (Breach of Contract)

COMES NOW Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for Count III of his Complaint for Damages alleges against Defendants, and each of them, and states the following:

67. That Plaintiff herein reaffirms and realleges paragraphs 1 through 66 of this Complaint.

68. Plaintiff is a tenured faculty member at IU Northwest, and as such signed an employment contract with IU Northwest at the time he was granted tenure.

69. IU Northwest's Academic Handbook, Sexual Misconduct Policy and Code of Academic Ethics are incorporated into Poulard's employment contract with IU Northwest.

70. IU Northwest has failed to adhere to the terms of its own policies as set forth in the Academic Handbook, the Sexual Misconduct Policy and the Code of Academic Ethics, and incorporated into Poulard's employment contract.

71. By failing to adhere to these terms, IU Northwest's actions constitute a material breach of Poulard's employment contract with IU Northwest.

72. As a direct and proximate result, Poulard suffered and will continue to suffer damages, including but not limited to deprivation of his employment with IU, severe emotional distress, humiliation, embarrassment and damage to his personal and professional reputation.

73. As a proximate result of the conduct of Defendants, Plaintiff was required to retain the undersigned attorney to defend him against the false and unfounded allegations of Defendants and is obligated to pay attorneys a reasonable fee for their services.

**WHEREFORE**, Plaintiff, by counsel, Johnson & Bell, P.C., requests judgment of the Court in favor of the Plaintiff and against the Defendants consisting of all injunctive relief, compensatory damages, and punitive damages, as well as attorney's fees and costs so allowed, and further requests all other just and proper relief to which he is entitled.

## COUNT IV

### (42 U.S.C. § 1983 Claim)

### (Deprivation of Due Process)

COMES NOW the Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for Count IV of his Complaint for Damages alleges against Defendants, and each of them, and states the following:

74. That Plaintiff herein reaffirms and realleges paragraphs 1 through 73 of this

Complaint.

75. IU Northwest's Sexual Misconduct Policy and Code of Academic Ethics are unconstitutionally vague and overbroad as applied to Poulard, allowing Defendants ample opportunity to enforce the policies in an ad hoc, arbitrary, and discriminatory manner.

76. IU Northwest has no legitimate reason that it can justify its vague policies.

77. IU Northwest has deprived Poulard of sufficient notice of the allegations against him in violation of the mandates of due process.

78. IU Northwest has deprived Poulard of a meaningful opportunity to be heard in violation of the mandates of due process.

79. Defendants have deprived Poulard of his employment at IU Northwest for the spring semester of 2016 without following procedures that satisfy the minimum requirements of due process.

80. IU Northwest's policies and Defendants' enforcement thereof, violate the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

81. Defendants' conduct has violated the principles of due process by depriving Poulard of his employment at IU Northwest, damaging Poulard's reputation, and causing Poulard great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, future pecuniary losses, and other consequential damages.

82. Defendants' actions were intentional, willful, and malicious and/or in reckless disregard to Plaintiff's rights as secured by 42 U.S.C. §1983, as amended by the Civil Rights Act of 1991, in violation of the United States Constitution as applicable to the states by the Fourteenth Amendment.

**WHEREFORE**, Plaintiff, by counsel, Johnson & Bell, P.C., requests judgment of the Court in favor of the Plaintiff and against the Defendants consisting of all injunctive relief, compensatory

damages, and punitive damages, as well as attorney's fees and costs so allowed, and further requests all other just and proper relief to which he is entitled.

## COUNT V

### (42 U.S.C. § 1983 Claim)

### (Violation of First Amendment)

COMES NOW the Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for Count V of his Complaint for Damages alleges against Defendants, and each of them, and states the following:

83. That Plaintiff herein reaffirms and realleges paragraphs 1 through 82 of this Complaint.

84. The subject of IU Northwest's investigation was premised upon speech imputed to Poulard.

85. Poulard's alleged speech is protected speech under the First Amendment of the United States Constitution.

86. IU Northwest's sanction of Poulard in retaliation for his protected speech is improper and violates his First Amendment rights.

87. IU Northwest's policies are unconstitutional as-written and/or as-applied because they are: vague and overbroad; discriminate against speech because of its content; discriminate against speech on the basis of the speaker's viewpoint; restrain the constitutionally protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policies; chill the free speech of Plaintiff and other citizens; allow the exercise of unbridled discretion; lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and improperly prohibit speech because it is not liked or considered an annoyance by others.

88. IU Northwest's polices, and their application to Poulard, violate the Free Speech Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment.

89. Defendants' conduct has chilled Poulard's speech, deprived him of his employment as a faculty member at IU Northwest, and caused him great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, future pecuniary losses, and other consequential damages.

90. Defendants' actions were intentional, willful, and malicious and/or in reckless disregard to Poulard's rights as secured by U.S.C. § 1983, as amended by the Civil Rights Act of 1991, in violation of the United States Constitution as applicable to the states by the Fourteenth Amendment.

**WHEREFORE**, Plaintiff, by counsel, Johnson & Bell, P.C., requests judgment of the Court in favor of the Plaintiff and against the Defendants consisting of all injunctive relief, compensatory damages, and punitive damages, as well as attorney's fees and costs so allowed, and further requests all other just and proper relief to which he is entitled.

## COUNT VI

### (Ind. Const. Art. 1, § 9)

### (Violation of Free Speech and Writing)

COMES NOW the Plaintiff, Dr. Jean Poulard, by counsel, Edward W. Hearn of JOHNSON & BELL, P.C. and for Count VI of his Complaint for Damages alleges against Defendants, and each of them, and states the following:

91. That Plaintiff herein reaffirms and realleges paragraphs 1 through 90 of this Complaint.

92. The subject of IU Northwest's investigation was premised upon speech imputed to Poulard.

93. Poulard's alleged speech is protected political speech under Ind. Const. Art. 1, § 9.

94. IU Northwest's sanction of Poulard in retaliation for this speech is improper and violates his rights under Ind. Const. Art. 1, § 9.

95. IU Northwest's policies are unconstitutional under the Indiana Constitution as-written and/or as-applied because they are: vague and overbroad; discriminate against speech because of its content; discriminate against speech on the basis of the speaker's viewpoint; restrain the constitutionally protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policies; chill the free speech of Plaintiff and other citizens; allow the exercise of unbridled discretion; lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open alternative avenues for expression; and improperly prohibit speech because it is not liked or considered an annoyance by others.

96. IU Northwest's polices, and their application to Poulard violate the Free Speech Clause of the Indiana Constitution set forth in Ind. Const. Art. 1, § 9.

97. Defendants' retaliatory conduct has chilled Poulard's speech, deprived him of his employment as a faculty member at IU Northwest, and caused him great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, future pecuniary losses, and other consequential damages.

98. Defendants' actions were intentional, willful, and malicious and/or in reckless disregard to Poulard's rights as secured by the Indiana Constitution under Ind. Const. Art. 1, § 9.

**WHEREFORE**, Plaintiff, by counsel, Johnson & Bell, P.C., requests judgment of the Court in favor of the Plaintiff and against the Defendants consisting of all injunctive relief, compensatory damages, and punitive damages, as well as attorney's fees and costs so allowed, and further requests

all other just and proper relief to which he is entitled.

Respectfully submitted,

JOHNSON & BELL, P.C.

By: _____
Edward W. Hearn, 18691-64
11051 Broadway, Ste. B
Crown Point, IN 46307
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Jean Poulard, and demands trial by jury for all issues so triable.

Respectfully submitted,

JOHNSON & BELL, P.C.

By: _____
Edward W. Hearn, 18691-64
11051 Broadway, Ste. B
Crown Point, IN 46307
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned upon his oath states that a true and complete copy of the foregoing document was made upon each party or attorney of record herein via email, facsimile or by depositing same in the United States Mail in envelopes properly addressed to each of them and with sufficient first class postage affixed this 9th day of March, 2016.

_____