UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JEAN POULARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:16-cv-00115-PPS-JEM |
| | ) | |
| THE TRUSTEES OF INDIANA | ) | |
| UNIVERSITY, D/B/A INDIANA | ) | |
| UNIVERSITY and INDIANA UNIVERSITY | ) | |
| NORTHWEST; | ) | |
| WILLIAM J. LOWE, individually | ) | |
| and in his official capacity as Chancellor of | ) | |
| Indiana University Northwest; MARK MCPHAIL, | ) | |
| individually and in his official capacity as | ) | |
| executive Vice Chancellor for Academic Affairs | ) | |
| of Indiana University Northwest; IDA GILLIS, | ) | |
| individually and in her official capacity as | ) | |
| Director of Affirmative Action | ) | |
| and Employment Practices and Title | ) | |
| IX Deputy Coordinator of Indiana University | ) | |
| Northwest; and GIANLUCA DI MUZIO | ) | |
| individually and in his official capacity as | ) | |
| associate professor and former Chair of the | ) | |
| Department of History, Philosophy, Political | ) | |
| Science, and Religious Studies at | ) | |
| Indiana University Northwest, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION TO STRIKE PLAINTIFF'S REPLY**

NOW COMES the Plaintiff, JEAN POULARD, by his attorneys, Johnson & Bell, P.C.

and pursuant to Fed. R. Civ. P. 56(c), files this memorandum of law in support of Plaintiff's

motion to strike inadmissible evidence and other impermissible portions of Defendants Indiana

University's Board of Trustees, d/b/a IU Northwest (hereinafter "IU" or "IU Northwest"),

Chancellor William Lowe, Vice Chancellor of Academic Affairs Mark McPhail, Title IX Deputy

Coordinator Ida Gillis, and Professor Gianluca Di Muzio (collectively "Defendants"), reply in support of their motion for summary judgment. In support thereof, Plaintiff states the following:[1]

## ARGUMENT

### A. Defendants impermissibly set forth several new arguments and cite to new evidence in support of those arguments that must be stricken from Defendants' reply.

The portions of Defendants' reply brief that set forth new arguments and rely upon new evidence to support the new argument must be stricken, as Defendants waived these arguments for failing to raise them in their original motion for summary judgment. When reply briefs raise new reasons for the entry of summary judgment and do not merely respond to matters placed in issue by the opposition brief, the new arguments are waived. *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1134 & n.* (7th Cir. 1996); *Rogers v. Fort Wayne Police Dep't,* No. 1:06-CV-371, 2008 U.S. Dist. LEXIS 24287, at *7 (N.D. Ind. Mar. 26, 2008). While the moving party may designate new affidavits in their reply if responsive to matters raised in the oppositional brief, the new evidence may not spring upon the opposing party new reasons for the entry of summary judgment. *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1134 n.* (7th Cir. 1996). The moving party may not submit new evidence with a reply to support a new argument. *Shurr v. A.R. Siegler,* 70 F. Supp. 2d 900, 919 (E.D. Wis. 1999). "Where new evidence is presented in either a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion, id., or else strike that new evidence." *Baugh v. City of Milwaukee,* 823 F. Supp. 1452, 1457 (E.D. Wis. 1993).

> 1. *Defendants cite to Exhibits 3 and 3A in support of a new argument regarding IU's tenure policies, and as such Defendants' new argument and new supporting exhibits must be stricken from Defendants' reply.*

---

[1] Rather than subject this Court to a another restatement of the facts in this case, Plaintiff fully incorporates his statements of fact as set forth in Dkt. Nos. 29, 30, 31, 36, and 37 as though fully set forth therein. [Dkt. No. # 30, p. 2-6; Dkt. # 31, p. 1-11; Dkt. 36, p. 1-46; Dkt. # 37 p. 1-25].

In the present case, Defendants have attached to their reply brief an affidavit from Victoria Roman-Lagunas attesting to University's tenure process, stemming from her service as Executive Vice Chancellor for Academic Affairs at Indiana University Northwest from July 1, 2017 onward. [Dkt. 46-3]. Roman-Lagunas's affidavit states:

> The University does not enter into employment contracts with faculty members once they earn tenure. Rather, the University issues a letter to the candidate informing him/her that they successfully earned tenure and have received an appointment as an Associate professor. A true and accurate copy of the letter issued to Dr. Poulard when he earned tenure is attached to this Affidavit as Exhibit A. This letter is kept by IUN in archived records as part of Dr. Poulard's dossier. [*Id.* at 1-2].

Defendants attached to the affidavit a letter dated April 6, 1991 that purports to be from Thomas Ehrlich to Jean Poulard congratulating him on receiving tenure (hereinafter "Exhibit 3A"). [Dkt. 46-3, p. 5].

Defendants offer this new evidence in Exhibits 3 and 3A[2] in support of a new argument in their reply brief, writing: "it is a regular practice of the University to simply issue a letter to faculty members who achieve tenure to inform them of the tenure decision…This letter does not incorporate any University policies and is not an employment contract." [Dkt. 46, p. 14]. This is the first time that Defendants raised this argument. Prior to Defendants' reply brief, Defendants never discussed IU's current or historical tenure policies and procedures, and never even produced the letter that allegedly bars Poulard's breach of contract claim.[3] [Dkt. 33, p. 26]. Instead, Defendants elected to merely make the cursory argument that the Indiana University Handbook contains a disclaimer clause that completely bars Poulard's breach of contract claim in their motion for summary judgment. [*Id.*] Accordingly, Defendants' argument that IU does not enter into employment contracts with their faculty once tenure is granted is a new argument that

---

[2] Defendants cite to Exhibits 3 and 3A on pages 14-15. [Dkt. 46, p. 14-15].
[3] The letter in Exhibit 3A does not contradict Poulard's evidence about executing an employment contract at the time that he obtained tenure.

3

must be stricken from Defendants' reply brief, as it is a substantially different argument than Defendants' earlier argument that the disclaimer clause acts as a complete bar to Poulard's breach of contract claim.

The evidence Defendants produced in Exhibits 3 and 3A to support this new argument is also entirely new evidence, as it is not attached to Defendants' motion for summary judgment. [Dkt. 33, p. 26]. Defendants never produced affiant Jennifer Kincaid for a deposition earlier in this case, or attached the letter from Exhibit 3A as an exhibit to another motion at any point during this litigation. Certainly, Defendants' new argument regarding IU's tenure policies and the new evidence found in Exhibits 3 and 3A require a responsive argument from Poulard for these issues to fully and properly briefed, and by raising this argument in their reply brief Defendants have deprived Poulard of this opportunity. Accordingly, Defendants' new argument in opposition to Poulard's breach of contract claim and the contents of Exhibit 3 and 3A must be stricken.

Defendants may contend that they made this new argument regarding tenure and designated Exhibits 3 and 3A to reply to an unforeseeable argument in Poulard's response about his employment contract. However, such a contention is unsupported by the evidence in this case, as Defendants had actual knowledge that Poulard would argue that he executed an employment contract with IU that incorporated IU's policies, as his complaint alleged:

> Plaintiff is a tenured faculty member at IU Northwest, and as such signed an employment contract with IU Northwest at the time he was granted tenure. IU Northwest's Academic Handbook, Sexual Misconduct Policy and Code of Academic Ethics are incorporated into Poulard's employment contract with IU Northwest. [Dkt. 4, p. 9, ¶ 68, 69].

Further, Poulard served the following discovery request on Defendants: "The Plaintiff's employment contract with IU Northwest, signed at the time that Plaintiff obtained tenure." [*See*

4

Defendants' Responses to Requests for Production of Documents, attached as **Exhibit A**, p. 14, ¶ 24]. Defendants answered Plaintiff's complaint and responded to Plaintiff's document request, and as such had actual knowledge of the factual basis of Plaintiff's breach of contract claim. [*Id.*; Dkt. 7, p. 17-19]. Instead of specifically addressing the merits of Plaintiff's claim in their dispositive motion, Defendants elected to make a general argument alleging that the disclaimer clause barred Plaintiff's entire claim. By raising this argument in their reply, Defendants deprived Plaintiff of the ability to have the merits of his breach of contract claim adjudicated by this Court.

In light of Defendants' knowledge of the allegations of Poulard's complaint, Defendants attempt to designate additional evidence in Exhibits 3 and 3A in their reply brief is nothing more than an impermissible effort to make their earlier general argument against Poulard's breach of contract claim more specific. Generally, the movant is not entitled to provide specific evidence in support of a general argument in a reply, as doing so counts as raising a new matter in reply. *Murphy v. Vill. of Hoffman Estates,* 1999 U.S. Dist. LEXIS 3320, at *6 (N.D. Ill. Mar. 15, 1999)(stating "this is not a situation where the plaintiff is citing to the record in reply to the defendant's response….[i]nstead, he is citing to sufficiently specific evidence for the first time in reply."). "Raising an argument generally in a motion or objections does not give a litigant license to be vague in his original submissions and provide the necessary detail in his reply." *Murphy v. Vill. of Hoffman Estates,* 1999 U.S. Dist. LEXIS 3320, at *6 (N.D. Ill. Mar. 15, 1999). Defendants' initial argument was a general claim that the disclaimer clause barred Poulard's claim. Defendants made this argument without regard to the actual merits of Poulard's breach of contract claim as alleged in Poulard's complaint, and now seek to make a more specific argument and designate more specific evidence to overcome Poulard's claim in their reply brief.

In effect, Defendants' argument and supporting evidence in Exhibits 3 and 3A is a new argument that must be stricken from Defendants' reply brief.

Further, though it appears that precedent may allow Defendants to designate new affidavits in their reply in select circumstances, there is absolutely no precedent allowing Defendants to designate new documentary evidence in support of their motion for summary judgment in their reply brief as they have in Exhibit 3A. Accordingly, Defendants could not designate new documentary evidence in the form of Exhibit 3A, even if they have the right to designate a new affidavit. Accordingly, Exhibit 3A must be stricken.

**2. Portions of Defendants' reply brief must be stricken, as it sets forth a new argument as to the existence of the disclaimer clause in 1990, and rely upon new evidence in Exhibit 1.**

Defendants also set forth a new argument regarding the date that that the alleged disclaimer clause went into effect, and designated new evidence in Exhibit 1[4] in Jennifer Kincaid's affidavit supporting this argument. Defendants allege in their reply that: "[h]e then makes the rather remarkable statement that 'at the time that he accepted tenure, there was not a disclaimer clause in the Academic Handbook to prevent IU's policies from becoming part of the contract." [Dkt. 46, p. 15]. Defendants also cite to Exhibit 3 to support the contention that "the University's Academic Handbook has included the same disclaimer clause since the early 1990s," but this statement is not supported by Exhibit 3. [*Id*; Dkt. 46-3, p. 3-4]. Rather, Kincaid's affidavit in Exhibit 1 alleges that the disclaimer clause went into effect in 1990 in Exhibit 1, and also testifies to other facts about the Academic Handbook, including the fact that it was previously maintained in hardcopy until 2013. [Dkt. 46-1, p. 1-2]. Defendants have never before produced this evidence in this case.

---

[4] Defendants cite to Exhibit 1 on pages 5-6. [Dkt. 46, p. 5-6].

Defendants' argument that IU's disclaimer clause was in existence since the 1990s is another example of Defendants impermissibly making a new argument in their reply brief, as their original argument against Plaintiff's breach of contract claim was nothing more than a general argument that was insufficiently supported by evidence. Now that Defendants' general contentions are challenged by Poulard, Defendants are attempting to make a more specific argument in their reply brief based upon new evidence, and in doing so make an entirely new argument. Further, this is the very first time that Defendants have attached an exhibit that claims that a disclaimer clause actually applies to Poulard's breach of contract claim, and as such, Defendants cannot escape the contention that they have presented new evidence in support of their summary judgment in their reply brief. *Murphy v. Vill. of Hoffman Estates,* 1999 U.S. Dist. LEXIS 3320, at *6 (N.D. Ill. Mar. 15, 1999).

Defendants cannot contend that they were merely responding to an unforeseeable argument in Plaintiff's response, as Defendants were aware that Poulard obtained tenure in 1991, and as such should have known that determining the effective date of such a disclaimer clause would be essential to adjudicating Poulard's breach of contract claim. Defendants cannot contend that they did not anticipate that it would be important for them to make an argument based upon the draft of the Academic Handbook in place at the time that Poulard obtained tenure in the early 1990s, and their failure to make a sufficient argument on this issue in their initial motion for summary judgment renders the more specific argument found in their reply brief a new argument. Further, this is the first time that Defendants introduced evidence about the historical terms of the Academic Handbook itself, and about the effective date of the disclaimer clause. It is curious that Defendants did so without producing an actual copy of the Academic Handbook from 1990 and 1991, and Defendants' failure to do so demonstrate the shortcomings

of Exhibit 1. Accordingly, Defendants' argument regarding the disclaimer clause is a new argument that is supported by new evidence in Exhibit 1, and must be stricken from Defendants' reply brief.

### 3. Defendants' reply brief also sets forth impermissible new arguments by relying upon new evidence in Exhibits 1 and 2 that must be stricken.

Defendants also impermissibly attach the affidavit of Jennifer Kincaid as Exhibit 1 and a current draft of IU's Sexual Misconduct Policy in Exhibit 2[5] to their reply brief in support of a new argument regarding the scope of the Sexual Misconduct Policy. For the first time, Defendants set forth the following argument in their reply:

> The fundamental flaw in Dr. Poulard's argument is that it erroneously posits that the University's Sexual Misconduct policy must be identical to the standards applicable to Title VII and Title IX. The University's Sexual Misconduct policy defines what conduct constitutes "sexual misconduct." That definition does not, and is not required to, limit what the University regards to be sexual misconduct to conduct that would be the subject of an actionable Title VII or Title IX claim…Rather, the University's Sexual Misconduct Policy is designed to allow the University to take action before the law is actually violated. As a result, Dr. Poulard's claim that the University violated his substantive due process rights because his conduct would not have violated Title VII or Title IX is without merit. [Dkt. 46, p. 5-6].

Defendants' reply also goes on to cite directly to the new evidence in Exhibit 2 to prove the terms of IU's Sexual Misconduct Policy, stating:

> Here, and unlike the policy in DeJohn, the University's Sexual Misconduct Policy has a section titled "Intellectual Inquiry and Debate," which states: *In determining whether sexual misconduct has occurred and what type of remedy, if any, might be appropriate in a given case, the University will also consider the fact that free intellectual inquiry, debate, and constructive dialogue are vital to the University's academic mission and must be protected even when the views expressed are unpopular or controversial. Accordingly, any form of speech or conduct that is protected by state or federal law, including the First Amendment, is not subject to this policy.*
>
> *The definition of sexual harassment in this policy is meant neither to proscribe nor to inhibit discussions, in or out of the classroom, of complex, controversial,*

---

[5] Defendants cite to Exhibit 2 on pages 5-6, 7, 8, 13. [Dkt. 46, p. 5-8, 13].

> *or sensitive matters…when in the judgment of a reasonable person they arise for legitimate pedagogical purposes…. The mere expression of views, words, symbols or thoughts that some people find offensive, does not create a hostile work environment.* [Ex. 2 at 3]. [Dkt. 46, p. 8].

Defendants' rely upon new evidence in support of this new argument in their reply in Exhibits 1 and 2, as Defendants never before introduced evidence regarding the history of the Academic Handbook, the language of the alleged disclaimer clause, the location of the Sexual Misconduct Policy, or the language of the current draft of the Sexual Misconduct Policy itself prior to their reply brief. [*Id*; Dkt. 46-1, Dkt. 46-2].[6]

Defendants' argument regarding the scope of IU's Sexual Misconduct Policy and Title VII and IX is entirely new, as it did not appear anywhere in Defendants' motion for summary judgment. [Dkt. 33, p. 19-24]. Further, the aforementioned new argument is actually contradicted by statements made by Defendant in their own motion for summary judgment, as Defendants initially argued that IU used federal law as a guideline for their Sexual Misconduct Policy. [Dkt. 33, p. 21]. Defendants now present this new argument regarding the scope of their Sexual Misconduct Policy and Title VII and IX, and in doing so deprive Plaintiff of a meaningful opportunity to respond to their argument and to refute the new evidence designated by Defendants.

Defendants may argue that they were merely responding to an unforeseeable argument made by Plaintiff in support of his substantive due process claim in his response brief, but again this argument is disingenuous. While Plaintiff did make the argument that IU's Sexual Misconduct Policy incorporates Title VII and Title IX in his response brief, Poulard first made

---

[6] The text of Exhibits 1 and 2 do not actually support Defendants' factual assertions in their reply, and for that reason alone Defendants' argument should be stricken. *Prince v. Chi. Pub. Sch.,* No. 09-CV-2010, 2011 U.S. Dist. LEXIS 95188, at *10 (N.D. Ill. Aug. 25, 2011).

this argument in his motion for summary judgment. [Dkt. 30, p. 12-15].[7] However, Defendants did not respond to Poulard's argument regarding the scope of IU's Sexual Misconduct Policy and Title VII and Title IX in their response to his motion for summary judgment, or designate new evidence to contradict Plaintiff's argument. [Dkt. 35, p. 1-23]. Instead, Defendants chose to wait until the reply brief of their own motion for summary judgment to designate new evidence and to make a new argument regarding the scope of IU's polices in light of Title VII and Title IX, even though they certainly had the opportunity to make a responsive argument before they filed their reply brief.

Waiting until their reply brief to respond to Poulard's argument in his motion for summary judgment deprived him of the ability to adequately respond to Defendants' argument and rebut Defendants' evidence. Defendants cannot now claim that they raised this new argument in reply to an unexpected responsive argument in Poulard's response brief, as they had the opportunity to address this argument in their response to his motion for summary judgment and elected to remain silent. Further, Defendants' new argument does not even truly address the merits of Plaintiff's argument regarding the scope of IU's policy and Title VII and IX, and as such depriving Plaintiff of the opportunity to respond is particularly harmful. Defendants have deprived Plaintiff of the right to respond to their new argument, and as such Defendants' new argument and supporting evidence in Exhibits 1 and 2 must be stricken.

Again, while it appears that precedent may allow Defendants to designate new affidavits in their reply in select circumstances, there is absolutely no precedent allowing Defendants to designate new documentary evidence in support of the new arguments found in their motion for summary judgment in their reply brief. Exhibit 2 is new evidence in this case, as it is a current

---

[7] Plaintiff's motion for summary judgment and memorandum in support of their motion for summary judgment was filed on October 10, 2017. [Dkt. 30]. Plaintiff's response in opposition to Defendants' motion for summary judgment was filed on October 7, 2017. [Dkt. 37, p. 14].

draft of IU's Sexual Misconduct Policy that explicitly states that it was created on August 28, 2017. [Dkt. 46-2, p. 24]. Accordingly, Exhibit 2 is not the same Sexual Misconduct Policy that was applied against Poulard in 2015, as it has been revised numerous times since Poulard's suspension on November 2, 2015, as noted on the face of the Policy itself. [Dkt. 46-2, p. 24]. IU is introducing new evidence into this case by citing to this new draft of the Sexual Misconduct Policy in Exhibit 2 in support of its representations as to the terms of the policy, and in arguing that IU's Sexual Misconduct Policy is more narrowly drafted than the policy in *DeJohn*.

Accordingly, Defendants should not be permitted to designate an irrelevant draft of their Sexual Misconduct Policy in their reply brief as Exhibit 2, even if they could designate Kincaid's affidavit in their reply. Further, it is unclear why Defendants feel that designating Exhibit 2 is particularly important now, but unimportant to support their response to Poulard's dispositive motion, or their initial motion for summary judgment, or why Defendants chose not to cite to the draft of the Sexual Misconduct Policy designated by Poulard in his dispositive motion or responsive brief to support their argument. As Defendants had repeated opportunities to designate this evidence and failed to do so, Exhibit 2 should be stricken.

**B. Defendants failed to disclose Roman-Lagunas and Kincaid as witnesses in this case in their initial disclosures and failed to produce the letter in Exhibit 3A in response to Poulard's discovery requests, and as such this evidence must be stricken from Defendants' reply brief.**

In the present case, Defendants' reply cites to previously undisclosed evidence in Exhibits 1, 2, 3 and 3A, and for that reason these exhibits must be stricken from Defendants' reply brief. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion. Fed R. Civ. P. 37. Rule 26(a) requires the parties to disclose to other parties the names of all known witnesses without awaiting a discovery request. Fed R. Civ. P. 26(a). Fed R. Civ. P. 26(e)

requires the parties to supplement answers to interrogatories and responses to request for production once additional evidence is discovered. Fed R. Civ. P. 26(e). The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1), unless harmless. *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 758 (7th Cir. 2004); *D.O.H. v. Lake Cent. Sch. Corp.,* No. 2:11-cv-430, 2015 U.S. Dist. LEXIS 45157, at *10 (N.D. Ind. Apr. 7, 2015). The possibility of making future supplemental disclosures as required by Rule 26(e) does not excuse a party from making full initial disclosures as required by Rule 26(a)(1)(E). *Logan v. Gary Cmty. Sch. Corp.,* No. 2:07-CV-431-JVB-PRC, 2008 U.S. Dist. LEXIS 95761, at *11 (N.D. Ind. Nov. 21, 2008).

With respect to Exhibit 3A, Defendants were aware of the existence of Poulard's employment file, as Defendants disclosed the fact that they retained Poulard's personnel file in their Rule 26(a) disclosures. [**Exhibit B**, p. 3]. Further, Poulard's discovery requests sought "all documents, communications, and internal memorandum found in Plaintiff's employment file at IU Northwest." [**Exhibit A**, p. 14, ¶ 23]. Poulard also wrote to Defendants on two separate occasions to request that Defendants supplement their document production with additional items in his employment file. In the first letter, dated September 8, 2016, Plaintiff writes: "We ask that you produce Dr. Poulard's employment contract in the next document production. Alternatively, if you contend that Dr. Poulard does not have an employment contract with IU, we ask that you produce any documents that were signed by representatives of IU and Dr. Poulard at the time that he was granted tenure." [Letter from Edward Hearn to Michael Terrell, dated September 8, 2016, attached as **Exhibit C**, p. 2]. Poulard also asked Defendants to provide a privilege log, and though Defendants complied with Poulard's request, the privilege log does not identify Exhibit 3A as a privileged communication. [Privilege Log of Defendants the Trustees of Indiana University, dated November 29, 2016, attached as **Exhibit D**, p. 1-8].

Poulard again wrote to Defendants on June 9, 2017 to request the documents in Plaintiff's employment file, stating: "it is evident that your office has failed to produce any of the documents in Dr. Poulard's employment file, including the contract that he executed when he obtained tenure. We demand that you produce these documents, Dr. Poulard's employment contract..." [Letter from Edward Hearn to Michael Terrell, dated June 9, 2017, attached as **Exhibit E**, p. 2]. Defendants responded with: "This is incorrect. Defendants produced the entirety of Dr. Poulard's employment file as it is maintained at Indiana University. With respect to the documents executed at the time Dr. Poulard obtained tenure, Indiana University is currently searching for any documents that have not yet been produced and will provide those to you if any exist." [Letter from Michael Terrell to Edward Hearn, dated July 14, 2017, attached as **Exhibit F**, p. 2].

Despite claiming that they produced Poulard's employment file as maintained at IU, Defendants never produced the letter in Exhibit 3A, as evidenced by the lack of a Bates stamp on the document. [Dkt. 46-3, p. 5]. Defendants now seek to rely upon this previously undisclosed document to prove that Poulard did not have an employment contract with IU in violation of the mandatory bar imposed by Rule 37(c)(1). Not only does this letter not explicitly stand for the proposition that Poulard never executed an employment contract with IU, it also suggests that other documents are in Poulard's employment file within IU's possession that were never produced – even documents that may be favorable to Poulard's breach of contract claim.

Defendants also failed to disclose the identity of affiants Jennifer Kincaid and Victoria Roman-Lagunas, in their Rule 26(a) initial disclosures prior to attaching their affidavits to their reply brief. [**Exhibit B**, p. 2-3].  This is particularly damaging to Poulard, because both Kincaid and Roman-Lagunas testify to substantive evidence in their affidavits: Kincaid testifies to the

history of the Academic Handbook, the effective date of the alleged disclaimer clause, the language found in the alleged disclaimer clause, and where the Sexual Misconduct Policy can be found, while Roman-Lagunas testifies to the University tenure procedures, claims that the University does not enter into employment contracts with faculty members when they earn tenure, and states that the University simply issues a letter to the tenure candidate confirming they received tenure. [Dkt. 46-1, p. 1-2; Dkt. 46-3, p. 1-2].

Defendants also seek to authenticate Exhibit 2 and 3A in Kincaid's and Roman-Lagunas's affidavits. [Dkt. 46-1, p. 1-2; Dkt. 46-3, p. 1-2]. This is not the first time that Defendants have failed to identify witnesses needed to authenticate documents in their initial disclosures, as Defendants also failed to identify Victoria Roman-Lagunas, Tim Goth, and Aneesha Ali[8] as witnesses before producing their affidavits in Dkt # 34-2, Dkt. 34-6, Dkt. # 34-18. [**Exhibit B**, p. 2-3]. As Defendants failed to disclose Goth, Roman-Lagunas, Ali, and Kincaid in their initial disclosures, and failed to supplement their initial disclosures before introducing evidence from these witnesses at summary judgment, Defendants should be barred from relying on this evidence in all of their dispositive motions, and especially in this reply brief. Accordingly, the entirety of Exhibits 1 and 3 should be stricken on the basis that Defendants failed to disclose these affiants pursuant to Rule 26(a) and Rule 26(e). Further, as the authenticating affidavits in Exhibits 1 and 3 must be stricken, the entirety of Exhibits 2 and 3A must be stricken on the basis that they were not properly authenticated. Fed. R. Evid. 901.

Likewise, Exhibit 2 is the current IU Sexual Misconduct Policy from September 2017. Defendants produced an earlier draft of the Sexual Misconduct Policy, but did not produce this

---

[8] Plaintiff objects to Defendants' failure to disclose Goth, Roman-Lagunas, and Ali in their mandatory disclosures under Rule 26(a) and (e), asks that those witnesses be barred from testifying at trial, and asks that this Court strike Exhibits that rely upon these affidavits for authentication - Exhibits 5, 9, 10, 13, 15, 17, 21, 24, 25, and 27 to their motion for summary judgment– as unauthenticated.

draft of the policy during discovery or disclose it during their initial disclosures as required by Rule 26, as evidenced by a lack of a Bates stamp. Accordingly, Exhibit 2 must be stricken on the basis that it was never produced to Poulard during discovery.

Defendants may contend that their failure to disclose the evidence in Exhibits 1, 2, 3, and 3A is harmless or otherwise substantially justified. The rule looks to whether the non-conforming party had "substantial justification" for the failure to comply with discovery rules and whether the failure to comply is "harmless." *Musser v. Gentiva Health Servs.,* 356 F.3d 751, 755 (7th Cir. 2004). *See also Salgado by Salgado v. GMC,* 150 F.3d 735, 742 (7th Cir. 1998)(holding "GM had a right to know the conclusions of these particular expert witnesses with respect to this particular accident."). The test considers: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *D.O.H. v. Lake Cent. Sch. Corp.,* No. 2:11-cv-430, 2015 U.S. Dist. LEXIS 45157, at *10 (N.D. Ind. Apr. 7, 2015); *Gonzalez v. Rodgers,* No. 2:09-CV-225-JTM-PRC, 2011 U.S. Dist. LEXIS 123331, at *15 (N.D. Ind. Oct. 24, 2011).

Here, Poulard was surprised by the evidence produced by Defendants in Exhibits 1, 2 3, and 3A, as he was never notified prior to summary judgment of the existence of affiants Kincaid and Roman-Lagunas, their knowledge of matters relevant to his claims, and the potential that their testimony may be damaging to his case. As the affidavits of Kincaid and Roman-Lagunas are offered as substantive evidence proving the contents of IU's policies and the manner in which IU's policies operate, and not just to authenticate documentary exhibits, these affidavits are particularly damaging to Poulard's claims as Poulard is unable to depose these witnesses or discover evidence contradicting their statements at this stage in the litigation. The existence of

the disclaimer clause to which Kincaid's affidavit attests by itself is particularly significant, as Defendants seek to establish that there was a disclaimer clause in place at the time IU granted Poulard tenure without allowing Poulard to conduct any discovery into this issue at all. Poulard had the right to depose these witnesses in preparation for trial to ensure that they have actual knowledge of the matters that they describe, and was deprived of doing so by Defendants when they failed to identify them in their initial disclosures, or supplement those initial disclosures. The prejudice to Poulard resulting from Defendants' bad faith suppression of this evidence is substantial, as Poulard now must find some way to rebut Defendants' evidence at this stage in the litigation, after Defendants' motion for summary judgment has been fully briefed.

Likewise, Defendants' conduct is suggestive of bad faith, as Poulard repeatedly and explicitly requested documents similar to Exhibit 3A by requesting Poulard's personnel file and documents related to his tenure grant. Defendants repeatedly responded by telling Plaintiff that they produced everything in their possession, though Defendants never produced Exhibit 3A for Poulard during discovery. Instead, Defendants waited until the eleventh hour – their reply brief at summary judgment – to produce evidence that Poulard explicitly asked for during discovery on more than one occasion. The question now becomes whether Defendants suppressed other evidence within their possession that would aid Poulard's claims.

Poulard cannot cure Defendants' breach in failing to disclose Kincaid and Roman-Lagunas (and Goth, and Ali), and the unproduced documents in Poulard's employment file without imposing substantial delay on the resolution of the issues set forth in Plaintiff and Defendants' dispositive motions, and without substantially delaying trial. If Plaintiff were allowed to continue with discovery at this point in the litigation, Defendants would need at least one month from the date this Court orders discovery to continue to gather the remaining

16

undisclosed documents that Defendants previously failed to produce. Further, after Poulard receives the documents in question, Poulard would need to verify that document production is complete, and to schedule the depositions of Kincaid, Roman-Lagunas, Goth, and Ali, which could take months to accomplish. Finally, Plaintiff and Defendant would then need to file supplemental dispositive motions that take into account the new evidence discovered during this ancillary discovery proceeding, all because Defendants never disclosed all of the evidence they had in their possession as required by Rules 26(a) and (e). There is also the risk that during the course of these ancillary discovery proceedings Poulard discovers that Defendants have suppressed far more evidence than previously suspected, which would delay this case even further. At best, resolution of these dispositive motions and trial would be delayed by eight months, and at worst, resolution of these issues could be delayed by two years. Rather than imposing such delay, this Court should just bar all of the previously undisclosed evidence introduced by Defendants in Exhibits 1, 2, 3, and 3A.[9] As it is within this Court's discretion to also strike the affidavits of Roman-Lagunas, Goth, and Ali in Dkt # 34-2, Dkt. 34-6, Dkt. # 34-18, Poulard also asks this Court to bar those exhibits as well for the same reasons.

**C. Defendants cite to inadmissible hearsay evidence to which no exception applies in their reply brief in Exhibits 2 and 3A that must be stricken.**

*1. Exhibits 2 and 3A are inadmissible hearsay evidence when cited by Defendants.*

Exhibits 2 and 3A also run afoul of the rule against hearsay, as these are out of Court statements made by IU's employees, and are offered by Defendants for proof of the truth of the matters asserted within these exhibits. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Harris*, 281 F.3d 667, 671 (7th Cir. 2002). "This principle is

---

[9] It is within this Court's discretion to also bar the affidavits of Roman-Lagunas, Goth, and Ali in Dkt # 34-2, Dkt. 34-6, Dkt. # 34-18. Plaintiff also asks this Court to consider barring these exhibits for these reasons.

reflected by the standard but often unanalyzed objection that such testimony by a party constitutes a 'self-serving declaration.'" *United States v. Phelps,* 572 F. Supp. 262, 265 (E.D. Ky. 1983)(citing 6 J. Wigmore, Evidence § 1732 (1976)).

Exhibit 2 is the Sexual Misconduct Policy currently in place at IU in 2017, and was, presumably, written by IU employees. The only purpose for Defendants to cite to Exhibit 2 is as proof of the truth of the language within the Policy itself. As Exhibit 2 is an out of court statement made by an unidentified employee of IU, and is offered by Defendants as proof of the truth of the statements contained within Exhibit 2, it is inadmissible hearsay evidence and must be stricken from Defendants' reply.

Exhibit 3A is a letter sent from an IU employee, Thomas Ehrlich, to Poulard. Defendants' only purpose in attaching this letter is to prove the truth of Ehrlich's statements to Poulard within the letter. Likewise, Exhibit 3A is an out of court statement made by a then-employee of IU, and is offered by Defendants as proof of the truth of the statements contained within Exhibit 3A. Accordingly, Exhibit 3A is inadmissible hearsay evidence and must be stricken from Defendants' reply. As the out of court statements in both Exhibit 2 and Exhibit 3A come from employees of the Defendants that are not parties or witnesses to this case, and were offered to prove the truth of the matters asserted within these documents, these exhibits are inadmissible hearsay and must be stricken.

Defendants may contend that Exhibit 2 and Exhibit 3A are business records and therefore fall within the business record exception under rule 803(6), but this argument must fail. Fed. R. Ev. 803(6) provides that the business record exception only applies to admit a "record of an act, event, condition, opinion, or diagnosis," if the record was "kept in the course of a regularly conducted activity of a business," and "making the record was a regular practice of that activity."

Fed. R. Evid. 803(6). Business records are presumed reliable because "businesses depend on them to conduct their own affairs, so there is little if any incentive to be deceitful, and because the regularity of creating such records leads to habits of accuracy." *Jordan v. Binns,* 712 F.3d 1123, 1135 (7th Cir. 2013). If "the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." *Rowland v. Am. Gen. Fin., Inc.,* 340 F.3d 187, 194-95 (4th Cir. 2003). "[D]ocuments prepared in anticipation of litigation are not admissible" as they are not records created within the regular course of business. *Jordan,* 712 F.3d at 1135;

Exhibit 2 is a university policy, not a business record, as it was not created to record IU's internal business operations. Arguably, IU's Sexual Misconduct Policy was created in anticipation of litigation over sexual harassment and Section 1983 claims, and as such is not a business record by definition. Exhibit 3A is not a business record because it was not created for the purpose of recording IU's business operations by an individual acting in the ordinary course of business, it was written by an employee for the express purpose of informing Poulard that he obtained tenure. By definition, this is not a business record. Accordingly, neither Exhibit 2 or 3A do not fall within the business records exception under Rule 803(6), and must be stricken on the basis that these documents contain inadmissible hearsay to which no hearsay exception applies.

> *2.  Defendants attempts to authenticate Exhibits 2 and 3A as business records do not bring Exhibits 2 and 3A within the business records exception to the hearsay rule.*

Though Defendants seek to authenticate Exhibit 2 and Exhibit 3A as business records, the mere authentication of these records does not make these records business records within the meaning of Rule 803. Hearsay within hearsay must be excluded unless each part of the combined statement conforms to an exception of the rule against hearsay. Fed. R. Evid. 805; *United States*

*v. Borrasi,* 639 F.3d 774, 780 (7th Cir. 2011). Under the Federal Rules of Evidence, authenticity of a particular piece of evidence and its admissibility under a hearsay exception are separate issues. *United States v. Tirouda,* Nos. 03-50433, 03-50434, 03-50446, 2005 U.S. App. LEXIS 364, at *4 (9th Cir. Jan. 10, 2005). The Notes of Advisory Committee for Fed. R. Evid. 901 state: "[i]t should be observed that compliance with requirements of authentication or identification by no means assures admission of an item into evidence, as other bars, hearsay for example, may remain." Fed. R. Evid 901, Committee notes. Thus, Defendants efforts to authenticate Exhibit 2 and 3A do not render the inadmissible hearsay statements contained within these exhibits admissible under any hearsay exceptions, even if Defendants did store these documents as part of a larger business record.

### D. Defendants introduce irrelevant evidence in Exhibits 1, 2, and 3A in an effort to prove that they are entitled to summary judgment that must be stricken from their reply.

Exhibits 1, 2, and 3A must be excluded on the basis of irrelevance. "Evidence which is not relevant is not admissible." *United States v. Quinto,* 582 F.2d 224, 233 (2d Cir. 1978). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The question is whether a reasonable person "might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." *United States v. Brashier,* 548 F.2d 1315, 1325 (9th Cir. 1976).

Here, Defendants offer a draft of the Sexual Misconduct Policy from 2017 in Exhibit 2 as proof of the terms in the Sexual Misconduct Policy in place in 2015 when Poulard was sanctioned. [Dkt. 46-2, p. 1](stating "this PDF created on: 08/28/2017."). A copy of the Sexual Misconduct Policy from 2017 is not evidence of the terms of the Policy in place in 2015 because

the Policy has undergone substantive revisions since its enactment in 2015, as noted on the face of the Policy itself. [Dkt. 46-2, p. 24]. The terms of the Sexual Misconduct Policy in 2017 is not relevant or necessary to determine what the Policy said in 2015 when Poulard was sanctioned. A reasonable person would not believe that Poulard violated the Policy that was in place in 2015 if he learned of the terms of the Policy as it exists now, in 2017.

Victoria Roman-Lagunas's testimony as to the current tenure procedures in place at IU in Exhibit 3 is not relevant to the question of whether IU did not engage in a practice of having its tenured employees execute an employment contract in 1991. It is noteworthy that Roman-Lagunas does not swear in her affidavit that the tenure process she describes existed in 1991; she is only attesting to how tenure is awarded at IU in 2017. Accordingly, a reasonable person would not conclude that it was unlikely that Poulard executed an employment contract 27 years ago when he obtained tenure in 1991 merely because IU's tenure policy in 2017 does not provide for such a practice. Accordingly, Exhibit 3 must be stricken on the basis that it is not relevant to the question of whether Poulard executed an employment contract with IU.

Finally, Exhibit 3A is likewise irrelevant to the question of whether Poulard executed an employment contract with IU, as nowhere in the letter does Ehrlich make any statements that refute the contention that Poulard and IU did not execute an employment contract at the time that Poulard obtained tenure. A reasonable person would not conclude that it was unlikely that Poulard executed an employment contract with IU merely because the letter in Exhibit 3A exists. Accordingly, Exhibits 2, 3, and 3A must be stricken on the basis that they are irrelevant to the questions before this Court.

**E.  Exhibits 1 and 3 must be stricken because Defendants violated the best evidence rule by having Kincaid and Roman-Lagunas testify to matters that must be proven by producing original copies of IU's Academic Handbook.**

Finally, the affidavits of Kincaid and Roman-Lagunas in Exhibits 1 and 3 run afoul of the best evidence rule because they attest to the terms of IU's Academic Handbook. "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R, Evid.1002. A production of the original document is required to prove the contents of a writing. *Waterloo Furniture Components v. Haworth,* 467 F.3d 641, 648-49 (7th Cir. 2006).

Here, Kincaid's affidavit attests to the language allegedly found in a disclaimer clause that was supposedly part of the Academic Handbook at the time Poulard obtained tenure in 1991, and claims that the disclaimer clause was allegedly part of IU's Academic Handbook in 1990. [Dkt. 46-1, p. 1-2]. Likewise, Defendants attempt to prove the terms of IU's current tenure policies, and IU's tenure policies in 1991 when Poulard obtained tenure in an effort to prove that Poulard did not execute an employment contract with IU. [Dkt. 46-3, p. 1-2].

Proof of these facts cannot be established by an affidavit; Defendants must produce an original copy of their Academic Handbook from 1990 and 1991 to prove these facts under Fed. R. Evid. 1001.  The mere fact that IU has someone testifying to the terms of its historical Academic Handbooks implies that IU retained these historical copies of their Academic Handbook within their records, and the question is why IU failed to produce the documents themselves if this is the case. IU's failure to produce these documents is inexcusable. Further, as Kincaid became an IU employee in 2009, and Roman-Lagunas in 2017, neither has first-hand knowledge of Poulard's tenure grant in 1991, and as such neither can attest to their first-hand knowledge of Poulard's tenure grant, as Poulard can.[10] *Waterloo Furniture Components v. Haworth,* 467 F.3d 641, 648-49 (7th Cir. 2006). Further, the argument also can be made that

---

[10] If IU contends that they did not retain these historical copies of IU's Academic Handbook, then Kincaid and Roman-Languas are not competent to testify as to the terms of IU's Academic Handbook in place in 1990 and 1991, and Exhibits 1 and 3 must be stricken on that basis.

Kinaid and Roman-Lagunas do not have personal knowledge of whether Poulard's employment contract was subject to a disclaimer clause, and therefore violate Fed. R. Evid. 602.[11] Accordingly, Exhibits 1 and 3 must be stricken to the extent that they seek to attest to evidence that can only be established through the production of an original document in violation of the best evidence rule.

WHEREFORE, the Plaintiff, Dr. Jean Poulard, respectfully prays and moves this Court to grant his motion and accordingly strike all inadmissible evidence, impermissible new arguments and impermissible new evidence, and all otherwise unsupported factual assertions from Defendants' reply in support of their motion for summary judgment, as set forth above. Plaintiff also requests all other just and proper relief.

Respectfully submitted,
JOHNSON & BELL, P. C.

By:      /s/ Edward W. Hearn
         Edward W. Hearn, #18691-64
         11051 Broadway, Ste. B
         Crown Point, IN  46307
         219/791-1900

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of December, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Edward W. Hearn*

---

[11] Fed. R. Evid. 602 provides: "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."