# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| JEAN POULARD, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 2:16 CV 115 |
| | ) | |
| THE TRUSTEES OF INDIANA | ) | |
| UNIVERSITY, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION and ORDER

Plaintiff Jean Poulard ("Poulard" or "plaintiff"), brings this suit following his suspension from his teaching position at Indiana University Northwest Campus ("IUN"). (DE # 1.) Poulard sues the Trustees of Indiana University, William J. Lowe, Mark McPhail, Ida Gillis, and Gianluca Di Muzio, all in both their individual and official capacities (collectively, "defendants"). (*Id.*)

The matter is now before the court on cross motions for summary judgment. (DE ## 29, 32.) Additionally, plaintiff has filed three motions to strike portions of defendants' evidence and arguments. (DE ## 38, 42, 54.) These pending motions are all fully briefed and ripe for ruling.

## I.     BACKGROUND[1]

---

[1] In the summary that follows, any unattributed facts are undisputed. This summary provides an overview. Additional relevant facts will be referred to in the analysis that follows.

Plaintiff is a professor of political science at IUN, having earned tenure in 1990. (DE ## 31-1 at 1; 34-1 at 4.) Defendant William Lowe ("Lowe") has been employed as the Chancellor of IUN since 2010. (DE # 31-6 at 3.) Defendant Mark McPhail ("McPhail") is the former Vice Chancellor of Academic Affairs for IUN. (*Id.*) Defendant Ida Gillis ("Gillis") is the former Director of Affirmative Action for IUN. (*Id.*) Defendant Gianluca Di Muzio ("Di Muzio") is a current faculty member and a former Department Chair at IUN. (*Id.*; DE # 31-5 at 8.)

On June 1, 2015, Di Muzio sent a letter or complaint to Gillis to express concerns regarding plaintiff's behavior based on a student evaluation from plaintiff's International Political Science, Latin America, (POLS-Y 362) class. (DE ## 31-2 at 121; 34-8 at 1.) The student evaluation stated that plaintiff would "frequently voice[] his racist and sexist views" and that he was "obscenely flirtatious with his female students, often saying perverted things." (DE # 34-8 at 1.) Di Muzio also commented that he had personally observed plaintiff kissing students on the hand and cheek. (*Id.*) Later, on June 30, 2015, Lowe informed Gillis that plaintiff had also attempted to kiss his wife's hand. (DE # 34-9.)

Gillis investigated these allegations and interviewed students from plaintiff's POLS-Y 362 class. (DE # 34-12 at 2.) She issued a report which summarized the student interviews and said that plaintiff engaged in the following conduct: (1) he made comments that women (including students in the class) were beautiful (*id.* at 3); (2) he

made comments about liking blondes (*id*.); (3) he told one student that "last week [she] looked really sexy in the green outfit" and rubbed her back (*id*. at 4); (4) he hugged female students and greeted female students with kisses on the cheek or hands (*id*. at 3–4); (5) he stated that black people were destroying Chicago and his solution to crime would be a weekly hanging (*id*. at 5); (6) he made comments that women should not be allowed to vote (*id*. at 7); and (7) he made disparaging comments about Muslim attire (*id*. at 4). Furthermore, in an evaluation from 2010, Di Muzio stated that a student wrote "I took great offense when [Poulard] stated how wrong and disgusting it is to be gay and how terrible and messed up a child with same sex parents is going to be in the head." (DE # 34-3 at 1.)

Plaintiff denies most of these actions. (DE # 36-1 at 65, 125, 128, 131–32.) But he does not deny hugging and kissing students or his comments about gays and gay parents. (*See id*. at 45–46.) He also states that he may have suggested the increased use of capital punishment for crime in Chicago's black neighborhoods. (*Id*. at 128.)

After reviewing Di Muzio's complaint and Gillis's report, McPhail determined plaintiff had violated the University Sexual Misconduct Policy and the University Code of Academic Ethics. (DE # 34-19 at 4.) He then instituted discipline for these actions. (*Id*.) Plaintiff was obligated to complete Indiana University's sexual misconduct training, he was put on leave without pay for a period of one semester beginning January 1, 2016, and a letter of reprimand was placed in his personnel file. (*Id*.)

Based on these events, plaintiff filed a complaint in the Lake County Superior Court on March 9, 2016. (DE # 4.) The case was removed to this court on April 6, 2016. (DE # 1.) Plaintiff brings the following six claims in his complaint; each claim is brought against all defendants: (1) compelling production of public records under Ind. Code § 5-14-3-9; (2) declaratory judgment; (3) breach of contract; (4) deprivation of due process under 42 U.S.C. § 1983; (5) violation of the First Amendment under 42 U.S.C. § 1983; and (6) violation of free speech and writing under Ind. Const. Art. 1, § 9. (DE # 4 at 7–14.)

Discovery has been completed in this case, and defendants have moved for summary judgment on all claims. (DE # 32.) Plaintiff also moves for partial summary judgment on his breach of contract and First Amendment claims. (DE # 29.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (internal citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

## III. DISCUSSION

The court will now address the pending motions. Although the motions to strike were filed more recently than the motions for summary judgment, the court will address them first, due to the questions they raise regarding the sufficiency of defendants' briefs and of the record before the court. The court will then address the cross motions for summary judgment together, going through each claim in the plaintiff's complaint..

A.    *Motion to Strike Inadmissible Evidence from Defendants' Motion for Summary Judgment (DE # 38)*

Plaintiff argues that in defendants' brief in support of their motion for summary judgment (DE # 33) they cite to pieces of evidence in the record which are inadmissible hearsay and should be stricken from the record. Generally, in their response, defendants argue that the various pieces of evidence in question are not hearsay because they are not offered for the truth of the matters asserted in those statements, but instead, for some other purposes. *See* Fed. R. Evid. 801(c)(2).

The court agrees with defendants' argument, as it is consistent with the Federal Rules of Evidence. If they do not offer the evidence in question to prove the truth of the matter asserted, then the court need not strike the evidence as hearsay. Therefore, to the extent the court does not strike any pieces of evidence at issue, the court will simply not consider that evidence as proof of the truth of the matters asserted in the evidence.

Given this general principle, the court will now more specifically discuss the evidence in question. First, plaintiff moves to strike Gillis's reports dated September 30, 2015, and January 8, 2016, which contain summaries of the investigations as to plaintiff's conduct and also contain statements from students and others regarding plaintiff's conduct (potential hearsay within hearsay). (DE # 39 at 3.) However, this evidence is admissible because it is not offered to prove that plaintiff actually performed any conduct, instead it is offered to show what Gillis believed was plaintiff's conduct. Furthermore, the reports themselves are admissible as business records under Federal Rule of Evidence 803(6) because they are records of an act or opinion made

during the investigation by Gillis (who had personal knowledge of the investigation), and these documents were kept in the regular course of business activity, and not simply to prepare for litigation.

Second, plaintiff asks the court to strike Di Muzio's evaluation and complaint which also contain student's statements regarding plaintiff's conduct. (DE # 39 at 4.) For the same reasons provided as to Gillis's reports, this evidence is admissible because the statements in the documents are not offered to prove the truth of the matters asserted and they are business records.

Third, plaintiff asks the court to strike four memoranda prepared by Gillis, some of which contain statements from Lowe and his wife. (DE # 39 at 5.) For the same reasons provided as to Gillis's reports, this evidence is admissible because the statements in the documents are not offered to prove the truth of the matters asserted and they are business records.

Fourth, plaintiff objects to emails sent from Gillis and McPhail to Poulard and from Kipley Drew to Poulard's counsel. (DE # 39 at 5–6.) But the emails are admissible because they are offered for various purposes other than to show the truth of the matters asserted in the emails. (*See* DE # 45 at 4–5.)

Fifth, plaintiff objects to a Faculty Board of Review Decision on the grounds that it is inadmissible hearsay and that it is an improper legal opinion under Rules 701 and 702 of the Federal Rules of Evidence. (DE # 39 at 6–7.) However, this is a business record and is not offered to prove the truth of the conclusions reached in the decision. Therefore it is admissible and it is not an improper legal opinion.

7

Sixth, plaintiff objects to a letter from Alexandria Zeiter. (DE # 39 at 7.) The court will not consider this evidence as proof of the truth of the matter asserted in the letter, and therefore there is no need to strike the letter.

Seventh, plaintiff makes a rambling argument that authentication of documents, alone, does not automatically make hearsay admissible. (DE # 39 at 8–9.) The court agrees, but this is irrelevant because the court nevertheless finds the evidence at issue admissible for the reasons stated in this order.

Eighth, plaintiff objects to the Academic Handbook Disclaimer (DE # 34-30) by saying it was not authenticated and it is hearsay. (DE # 39 at 9.) However, the specific disclaiming statement was authenticated through an affidavit provided by defendants (DE # 46-1) attached to their reply brief. Additionally, the disclaimer is not hearsay because it is contractual language. *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007). Therefore, this argument fails.

Ninth, plaintiff objects to various portions of deposition testimony. (DE # 39 at 10–11.) However, all of these statements are not hearsay as they are either statements of an opposing party under Federal Rule of Evidence 801(d)(2) or they will not be considered as proof of the truth of the matters asserted. Therefore, there is no need to strike the statements.

Lastly, plaintiff highlights several sentences in defendants' brief that are not supported by citations to evidence in the record. (DE # 39 at 11.) It is true that many of these sentences are not *immediately* followed by a citation to the record. (*See* DE # 33.)

But a good faith reading of the brief makes it clear that all of these arguments are eventually supported by citations to the record later in the same paragraph; in most cases that citation follows the sentence which comes immediately after the sentence to which plaintiff objects. Therefore, there is no need to strike these statements.

For these reasons, the first motion to strike is denied.

B.     *Motion to Strike Inadmissible Evidence from Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (DE # 42)*

Plaintiff filed another motion to strike defendant's evidence and a new 26-page brief in support of that motion. (DE # 52.) This second motion is largely redundant and it has already exhausted a large amount of the court's resources.[2] Defendants relied on much of the same evidence in support of their own motion for summary judgment as they did in response to plaintiff's motion for summary judgment. Plaintiff already filed a motion to strike evidence in support of defendants' own motion for summary judgment. Thus, this second motion to strike evidence in defendants' response brief makes mostly the same arguments about mostly the same evidence as the first motion to strike.

Where the evidence in question in the second motion to strike overlaps with the first motion to strike, the court denies the second motion to strike for the same reasons as the first one. Furthermore, in ruling on plaintiff's partial motion for summary judgment, the court will not rely on any evidence that plaintiff objects to in this motion,

_____

[2] The court has already issued an order denying a motion for leave to file a brief with excess pages in support of this second motion to strike. (DE # 50.)

other than the evidence already found admissible in its analysis of the first motion to strike. Therefore, the court denies the remainder of the motion as moot.

C.   *Motion to Strike Defendants' Reply in Support of their Motion for Summary Judgment (DE # 54)*

Plaintiff files a 23-page argument (DE # 55) asking the court to strike portions of defendants' 16-page reply brief in support of their motion for summary judgment (DE # 46). In ruling on defendants' motion for summary judgment, the court will only rely on plaintiff's reply brief (DE # 46) for two notions: (1) defendants' argument regarding the scope of the University's Sexual Misconduct Policy; and (2) defendants' argument and evidence that the disclaimer clause appeared in a version of the Academic Handbook in 1990. Plaintiff objects to the admissibility of both of these portions of the reply brief. The court will discuss those objections below. But first, to the extent plaintiff objects to any other arguments or evidence in the reply, that the court does not rely on, the third motion to strike is denied as moot.

Plaintiff objects to defendants' argument regarding the scope of the Sexual Misconduct Policy and defendants' inclusion of a new version of the policy as an attachment. However, this argument is admissible as it is clearly not a "new" argument, and instead is a direct response to arguments raised by plaintiff in the response brief. (*See* DE # 46 at 8 (Referencing plaintiff's argument in his response brief, stating "[i]n making this argument, Dr. Poulard relies upon *DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008) . . . .").) Furthermore, plaintiff has already included a version of the Sexual Misconduct Policy (from 2015) in the record, and the court will rely on that 2015 version

in making its determinations. (*See* DE # 36-2.) Therefore, there is no need to strike this argument and evidence.

Next, plaintiff once again objects to defendants' arguments and evidence related to the disclaimer clause. The argument itself is acceptable because it is not a "new" argument. Again, defendants are merely responding to Dr. Poulard's arguments, including a statement that "at the time that he accepted tenure, there was not a disclaimer clause in the Academic Handbook to prevent IU's policies from becoming part of the contract[.]" (DE # 37 at 24.)

Additionally, the evidence supporting this argument—Jennifer Kincaid's affidavit—is admissible because it was introduced to authenticate evidence and to rebut arguments made for the first time in the response brief. *See Mengers v. Gulf Stream Coach Inc.*, 136 F. Supp. 3d 1006, 1011 (N.D. Ind. 2015) (stating that an affidavit included with defendants' reply brief was sufficient to authenticate documents).

Finally, neither the disclaimer clause, nor the Sexual Misconduct Policy, are hearsay. *See Jones v. Lake County Sheriff's Dep't.*, No. 2:11-CV-356-TLS, 2014 WL 3928405, *2 (N.D. Ind. Aug. 11, 2014) (holding that policies were not hearsay because "[t]he documents, which describe prohibited workplace activity and the procedures for reporting such activity, are intended to show the existence of the policy itself, and the truth or falsity of the statements within the policy are not relevant").

For these reasons, the third motion to strike is denied.

D.      *Count I: Compelling Production of Public Records*

In his complaint, plaintiff asks the court to compel defendants to produce certain records. (DE # 4 at 7.) Defendants move for summary judgment on this claim, on the grounds that they have already produced these records. (DE # 33 at 14.) Plaintiff does not contest this basis for summary judgment (*see* DE # 37) and he admits that he has been provided with the records (DE # 34-1 at 28). Accordingly, summary judgment is appropriate on this claim and the claim is dismissed.

    E.     *Count II: Declaratory Judgment*

In this claim, plaintiff asserts two constitutional challenges to IUN's Sexual Misconduct Policy. (DE # 4 at 8.) He alleges the policy is unconstitutionally vague in violation of due process and unconstitutionally overbroad so that it chills protected speech. (*Id.*) Defendants move for summary judgment on the claim.

    i.     *Unconstitutionally Vague*

A policy is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Brown v. Chi. Bd. of Educ.*, 824 F.3d 713, 716–17 (7th Cir. 2016) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). Significantly, a policy need not define every term to survive a vagueness challenge. *Id.* at 717. Rather, "[i]n the public employment context, . . . standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *Keating v. Univ. of S. Dakota*, 569 Fed. App'x 469, 471 (8th Cir. 2014) (quoting *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992)).

Plaintiff argues that this statute fails to provide a clear definition of what constitutes harassment. (DE # 4 at 8.) However, the policy clearly lists its definition of sexual harassment. (DE # 31-10 at 5.) This definition would put ordinary persons on notice that kissing students without their permission would put them at risk of discharge. (*See id.*)

In its response to the motion for summary judgment, plaintiff argues that the policy is still vague because it provides discretion to Gillis and McPhail to interpret the policy (for instance, to determine what constitutes conduct "of a sexual nature"). (DE # 37 at 17.) However, a lack of discretion by decision-makers is not required for a statute to avoid unconstitutional vagueness. Although Gillis and McPhail will be interpreting the relatively broad policy language, plaintiff can still use his common sense and ordinary intelligence to determine what will be a violation, based on the definitions in the policy. *See* Keating, 569 F. App'x at 471 ("Although the policy employs broad language, that alone does not necessarily prevent an ordinary person from recognizing that certain conduct will result in discharge or discipline."); *see also Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, *6 (S.D. Ohio Mar. 13, 2015) (holding that Ohio University's sexual harassment policy was not unconstitutionally vague where it included an objective and subjective standard and put individuals on notice as to what specific circumstances would be considered in reviewing the accused's conduct).

For these reasons, there is no constitutional violation and the Sexual Misconduct Policy is not void for vagueness.

ii.     *Overbroad*

Plaintiff alleges that "IU Northwest's Sexual Misconduct Policy is unconstitutionally overbroad as applied to Poulard, as it was used to punish Poulard for constitutionally protected speech." (DE # 4 ¶ 63.) Plaintiff cites to *Virginia v. Hicks*, 539 U.S. 113, 123–124, (2003) in support of his claim. (DE # 37 at 19.) There, the Supreme Court held "[t]he showing that a law punishes a 'substantial' amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Hicks*, 539 U.S. at 118–19 (internal citations and quotation marks omitted).

Plaintiff argues that the Sexual Misconduct Policy punishes his free speech by defining such speech as sexual harassment. *See DeJohn v. Temple Univ.*, 537 F.3d 301, 316 (3d Cir. 2008) ("[T]here is no 'harassment exception' to the First Amendment[] . . . ."). However, the Sexual Misconduct Policy in the case at hand is clearly not overbroad. In fact, it specifically states that "any form of speech or conduct that is protected by state or federal law, including the First Amendment, is not subject to this policy." (DE # 31-10 at 7.) Consequently, the Policy has a limiting construction that so narrows it as to remove the threat to constitutionally protected expression. Therefore, there is no constitutional violation and the Sexual Misconduct Policy is not overbroad.

For these reasons, there are no material issues of fact, summary judgment is appropriate on this claim, and Count II is dismissed.

14

*F.     Count III: Breach of Contract*

Plaintiff alleges that IUN failed to adhere to the terms of its own policies set forth in the Academic Handbook, the Sexual Misconduct Policy, and the Code of Academic Ethics, all which—he claims—were incorporated into Poulard's employment contract. (DE # 4 ¶ 70.) Both parties move for summary judgment on this claim. (DE ## 30 at 22; 33 at 24.)

According to plaintiff's affidavit, plaintiff executed an employment contract with IUN at the time he received tenure in 1990. (DE # 36-1 at 5.) The policies listed above (the Academic Handbook, the Sexual Misconduct Policy, and the Code of Academic Ethics) would be terms of the contract and would impose obligations on both IUN and plaintiff. (*Id*.) Furthermore, plaintiff states in his affidavit that there was no clause in the policies stating that they were not to be included in plaintiff's employment contract. (*Id*. at 6.)

On the other hand, defendants have provided a copy of a disclaimer statement from the Academic Handbook which states that "[s]tatements and policies in this Handbook do not create a contract and do not create any legal rights." (DE # 34-30.) This document seems to be from an edition of the handbook updated in 2014. (*See id*.) However, defendants also provide the affidavit of Jennifer Kincaid, the Chief Policy Officer at Indiana University since 2009. (DE # 46-1 at 1.) She attests that this disclaimer clause was in the version of the Academic Handbook that was in effect in 1990. (*Id*.)

Accordingly, there is a dispute of fact as to the whether this disclaimer existed at the time plaintiff purportedly entered into an employment contract. Moreover, neither

party has submitted an actual signed employment contract from 1990. The court must "not speculate as to what is contained in a document not in the record, and will consider only the actual record before it." *United States v. Conservation Chem. Co. of Ill.*, 785 F. Supp. 1215, 1230 (N.D. Ind. 1989).

At this stage of the litigation, the court must construe all facts in a light most favorable to the non-moving party. Thus, when analyzing plaintiff's motion for summary judgment, the court must construe the facts as though the disclaimer was in place in 1990, which would, in turn, bar plaintiff's breach of contract claim. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 73 F. Supp. 3d 1030, 1041 (S.D. Ind. 2014) ("Because the Academic Handbook explicitly disclaims any creation of a contract, Dr. Packer cannot rely upon these policies as a basis for her breach of contract claim.")

On the other hand, when analyzing defendants' motion for summary judgment, the court must construe the facts as though the disclaimer did not limit the employment contract in 1990. The disclaimer clause is the entire basis for defendants' motion for summary judgment as to this claim, and without it, their argument fails.

In that light, the material terms of the contract remain unclear and in genuine dispute by the parties. This genuine issue of fact precludes summary judgment. Accordingly, summary judgment is denied as to both motions on this claim.

G.    *Count IV: Deprivation of Due Process*

Plaintiff brings a claim for deprivation of due process under 42 U.S.C. § 1983. (DE # 4 at 10.) He argues that defendants' policies and enforcement of their policies, when he was disciplined, violated his due process rights.

16

Defendants concede that plaintiff had a property interest in his continued employment. (DE # 33 at 21 n. 12.) Defendants cannot deprive plaintiff of this property interest without due process. *See Cleveland Bs. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). "An essential principle of due process is that a deprivation of . . . property be preceded by notice and opportunity for hearing." *Id*. at 542 (internal quotation marks omitted). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id*. at 546. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id*. "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id*.

McPhail issued his disciplinary decision on November 2, 2015. (DE # 34-19 at 2.) Prior to that deprivation date, Gillis called plaintiff on July 14, 2015. (DE # 36-1 at 3.) Plaintiff admits that, during the call, Gillis "advised him [of] allegations of sexist and racist behavior" and that she "wanted to meet with him to discuss." (DE # 34-1 at 18.) He also admitted that Gillis advised him that the allegations were "about inappropriate remarks and behavior of a sexual and racist nature." (*Id*.) Plaintiff was also aware that the allegations were related to a "student evaluation." (*Id*. at 17.) Following that call, plaintiff understood there to be allegations against him that he was racist and sexist. (DE # 36-15 at 22.)

On July 21, 2015, Gillis sent a letter to plaintiff once again informing plaintiff that there were allegations against him that she was investigating. (DE # 34-17.) Gillis also invited plaintiff to speak with her and to be interviewed. (*See id*. at 1.) However, plaintiff refused to meet with Gillis. (DE # 34-1 at 16–17.) Instead, he sent an email to Gillis in which he again acknowledged that he was aware of the nature of the complaints against him and that they were related to racist and sexist remarks (although he did not know the exact names of the people who had complained). (DE # 34-14.)

All of this serves as evidence of plaintiff's notice and opportunity to be heard. *See, e.g.*, *Cholewin v. City of Evanston*, 899 F.2d 687, 689-90 (7th Cir. 1990) (written notice of investigation and personal interview satisfied due process). It does not matter that plaintiff did not actually attend the interview offered by Gillis. *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) ("Employee cannot claim lack of due process when his employer offered him such a pretermination hearing and he refused to attend.") Furthermore, his email to Gillis shows that he was aware of the charges and such a response can help to demonstrate that notice was sufficient. *See Fong*, 692 F. Supp. at 950 ("Here, the record is clear that the person in question understood the charges against him because he filed an answer to them . . ." among other things.).

Plaintiff argues that his due process rights were also violated because Gillis told him he could not have an attorney present at his interview, which was a violation of University policy. (*See* DE # 9 at 1.) However, this argument fails because plaintiff does not have a federal due process right to state-mandated process. *Charleston v. Bd. of Trs. of*

*Univ. of Ill. at Chi.*, 741 F.3d 769, 774 (7th Cir. 2013) ("It may have been unfair for the university not to follow its own procedures in [plaintiff's] case, but it was not unconstitutional.")

Lastly, plaintiff argues that his punishment was arbitrary and capricious because plaintiff could only be sanctioned if the requirements of Title VII or IX were satisfied. (DE # 37 at 14.) This argument is irrelevant and without merit. University policy does not need to match Titles VII and IX. *See Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012) (noting that Title VII did "not constitute an appropriate legal foundation" to determine whether a professor committed sexual harassment as defined by university policy).

What matters is that plaintiff was given notice of the charges against him and an opportunity to be heard, before McPhail disciplined him. Therefore, there is no material issue of fact, plaintiff's due process claim fails, summary judgment is appropriate, and the claim is dismissed.

### H. Count V: Violation of the First Amendment

Plaintiff alleges that defendants infringed his First Amendment right to free speech when he was suspended without pay in retaliation for the content of his protected speech. (DE ## 4 at 12; 30 at 6.) Plaintiff moves for summary judgment on this claim (DE # 30 at 6), and so do defendants (DE # 33 at 16).

"In order to establish a *prima facie* case of unlawful First Amendment retaliation, a public employee must establish that: (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First

19

Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009). "If a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that it would have taken the same action in the absence of the protected speech." *Id*. "If the employer carries this burden, the plaintiff may still reach trial by producing sufficient evidence to allow a reasonable fact finder to determine that the employer's reasons were merely a pretext for firing the employee, at least in part, for exercising her First Amendment rights." *Id*.

In his motion for summary judgment, Poulard states that he "disputes the veracity" of Gillis's findings regarding the content of his speech. (DE # 30 at 8.) Also, as the court stated in the background section of this order, plaintiff has denied most of the statements attributed to him by Gillis. Nevertheless, for the following reasons, this dispute of fact does not create a *genuine* issue of fact precluding summary judgment.

In order for plaintiff to prevail on his First Amendment retaliation claim, he must show both that his speech was protected and that his speech was a "motivating factor" in the employer's adverse action. However, the only evidence as to motivating factor, before the court, is McPhail's administrative action which specifically outlines the motivating factors behind plaintiff's suspension. (*See* DE # 34-19.) McPhail's letter states that his action was motivated by the alleged conduct and statements of Poulard as described in Di Muzio's complaint, Di Muzio's evaluation, and Gillis's report. (*Id*. at 2-3.) Therefore, McPhail based his decision on defendants' (and specifically Gillis's) views of plaintiff's conduct and statements.

On the other hand, plaintiff's view of the facts is that he did not make most of these statements, or that when he did, he sometimes referred to things in a more mild or humorous manner (*e.g.* capital punishment rather than hangings). However, there is no evidence presented by plaintiff that any of these milder or non-existant statements were a motivating factor behind McPhail's administrative action. Nor does plaintiff develop any argument that McPhail's stated reasons were merely a pretext for his punishment, and that the true reason for his suspension were these more mundane statements.

As such, plaintiff's First Amendment retaliation claim could not survive if the court viewed the facts in his favor regarding what statements he made. This means there is no genuine issue of material fact regarding the content of plaintiff's statements. Therefore, in order for plaintiff's claim to survive, he must demonstrate that the statements that Gillis and McPhail cite to were protected speech, such that plaintiff successfully states a *prima facie* case for his First Amendment claim.

The determination of whether speech is protected is a question of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). The First Amendment protects a public employee's speech if (1) the employee spoke as a citizen on a "matter of public concern" and, once this is established, (2) the employee's interest "in commenting upon matters of public concern" outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 142, 147 (quoting *Pickering v. Bd. Of Ed. Of Tp. High Sch. Dist. 205, Will Cnty. Ill.*, 391 U.S. 563, 568 (1968)).

Plaintiff's statements regarding his students' attractiveness were clearly not matters of public concern and were, thus, not protected speech. But, some of his other statements regarding gays, Muslims, and African Americans and crime, could potentially be matters of public concern. Therefore, the court will consider the balance between plaintiff's interests in making those statements, and the state's interests in restricting them.

The Seventh Circuit applied this *Pickering* balancing to the context of community college instructors in *Piggee v. Carl Sandburg Coll.*, 464 F.3d 667, 671-72 (7th Cir. 2006). Applying a balancing test, the Seventh Circuit found that the instructor's interests in making comments regarding religion and homosexuality were not protected when balanced against the school's interest in the instructor's adherence to the subject matter of the course she was hired to teach (which in that case was cosmetology). *Id.* at 671-72. Other courts have considered other interests in performing the balancing test. *See Nichols v. Univ. of So. Mississippi*, 669 F. Supp. 2d 684, 699 (S.D. Miss. 2009) ("In considering [a university's] interest in efficient operations, the court can consider factors such as whether the speech disrupts the regular and successful operation of the enterprise, affects morale and discipline, fosters disharmony, impedes the performance of the employee's duties, or detrimentally impacts working relationships that depend on loyalty and confidence.")

In the case at hand, McPhail specifically restricted plaintiff's speech out of a concern for "develop[ing] among students respect for others and their opinions." (DE # 34-19 at 3.) The court agrees with McPhail that IUN had strong interests in restricting

plaintiff's statements in order to preserve respect for the student body, harmony among the IUN population, and to prevent the exclusion and isolation of the minorities targeted by plaintiff's speech.

McPhail also concluded that the statements were not germane to the topic of the class. (DE # 34-19 at 3.) However, plaintiff argues that his case can be distinguished from *Piggee* on this issue, because, since he teaches a political science course, his statements and comments were within the scope of his course. (DE # 37 at 7.) The court disagrees.

It is true that the teacher in *Piggee* taught cosmetology which was even further off topic from the instructor's speech. However, here, plaintiff's course was a course involving Latin American politics, an issue that was not addressed in any of the statements at issue. Second, the court recognizes that faculty members have some right to engage in academic debates, pursuits, and inquiries. *Piggee*, 464 F.3d at 671. And being a political science course should give professors some leeway to delve into topical or hot-button issues social and political issues. However, statements about gays being "disgusting," criticizing religious (Muslim) clothing, and asserting that African Americans should be "hung," are not topical statements and do not invoke hot-button issues. They sound much more like harassing statements that IUN has a strong interest in eliminating in order to foster an inclusive learning environment for all students, including gays, Muslims, and African Americans.

Accordingly, when performing the *Pickering* balancing test, the court concludes that the interests of IUN outweigh Poulard's interests. Therefore, the court finds that

23

Poulard's speech was not protected under the First Amendment. Accordingly plaintiff's claim fails and summary judgment is appropriate on the claim in favor of defendants. Therefore the court will grant defendants' motion for summary judgment as to this claim and deny plaintiff's motion as to this claim. Moreover, because the court has found no constitutional violations of either due process or the First Amendment, the individual defendants in this case receive qualified immunity on the § 1983 claims. *See Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995).

  *I. Count VI: Violation of Free Speech and Writing*

  Plaintiff brings this claim against defendants pursuant to Article I, Section 9 of the Indiana Constitution. (DE # 4 at 13.) Defendants move for summary judgment on this claim, but, rather than presenting a new argument, they contend that their argument on their First Amendment claim also applies here. (DE # 33 at 17 n.10.) Defendants assert that the same standard applies to free speech claims under the First Amendment and the Indiana Constitution. (*See id*.) Plaintiff agrees and simply adopts his argument on his First Amendment claim in support of his Indiana free speech claim. (DE # 37 at 8 n.7 ("Poulard sets forth the same argument as to the violations of free speech that he suffered under the Indiana [C]onstitution.").)

  Accordingly, for the same reasons that the court granted summary judgment on Count V of the complaint, it also grants summary judgment on Count VI. Plaintiff's free speech and writing claim is dismissed.

## IV. CONCLUSION

  For the foregoing reasons, the court

(1) **DENIES** plaintiff's motion for partial summary judgment (DE # 29);

(2) **DENIES in part** defendants' motion for summary judgment (DE # 32) as to the breach of contract claim;

(3) Otherwise **GRANTS in part** (DE # 32) defendants' motion for summary judgment on all other claims;

(4) **DENIES** plaintiff's motions to strike (DE ## 38, 42, 54);

(5) **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by October 26, 2018. A trial date will be set under a separate order.

                                       **SO ORDERED.**

Date: September 28, 2018

                                       s/James T. Moody
                                       JUDGE JAMES T. MOODY
                                       UNITED STATES DISTRICT COURT